## BRAY vs. MORSE, imp.

### *Agency.*

1. After the dissolution of a firm, one of its members cannot act as the agent of a creditor of the firm in holding obligations due the firm, as collateral security for a note due from the firm to such creditor, and taking a conveyance of land in settlement of such an obligation; and in such a case the creditor, in an action on the firm note, is not bound to account for the value of such land or of such alleged collaterals, where it appears that they were never in his possession, that he never authorized such alleged agent to hold them for him, and never received any payments thereon, and that the land was not conveyed to him but to such alleged agent.

2. Such conveyance to one of the former partners, in settlement of a debt due the firm, may enure to the benefit of the firm, but does not enure to plaintiff's benefit.

APPEAL from the Circuit Court for *Winnebago County.*

Action on three promissory notes executed to the plaintiff by defendants *J. F. Morse* and C. C. Paige, under their firm name of J. F. Morse & Co. The defendant Paige did not answer or appear. *Morse* answered separately, that on or about May 18, 1874, defendants placed in plaintiff's hands, as collateral security to the notes in suit, certain personal property consisting of notes and mortgages; and that plaintiff, before the commencement of this action, had realized certain sums upon the collaterals, for which she had not accounted to defendants, and which should be deducted from the amount claimed to be due her.

At the trial, the notes sued upon were put in evidence, and were as follows: 1. One for $400, dated July 11, 1870, payable on demand after date. Upon this were indorsed payments of interest and principal at various dates, from September 22, 1870, to July 11, 1872, signed by C. W. and C. Paige; and also the following: "Gabe Bouck paid on within note, $25, August 15, 1873; paid for J. F. Morse & Co." 2. One for $350, dated July 5, 1871. On this were indorsed two pay-

ments of interest, $35 each, dated respectively July 5, 1872, and August 15, 1873, without any signature; the second payment being stated to have been made by Mr. Bouck. 3. One for $250, dated January 4, 1872, and payable one day after date. On this were indorsed two payments of interest of $25 each, dated January 4, 1873, and March 17, 1874, and signed by C. C. Paige. These notes were all made payable to *Mrs. A. M. Bray* (the plaintiff) or order, and all bore interest at the rate of ten per cent.

It appeared that J. F. Morse & Co. dissolved partnership in October, 1872, and that a suit for the settlement of the partnership affairs was pending at the time this action was tried. It also appeared that N. W. Rogers and H. P. Rasmussen, about September 5, 1872, executed and delivered to defendants their joint and several promissory note for $825, payable to J. F. Morse & Co. or order, sixty days after date, with interest at ten per cent. until paid, and also executed and delivered to defendants a mortgage of real property as security for the payment of such note. Defendant *Morse* put in evidence a quitclaim deed given by H. P. Rasmussen and wife to C. C. Paige, dated June 23, 1874, purporting to convey the property described in said mortgage. Mr. Rasmussen, as a witness for the defendant, testified that at the time when he executed said deed, Paige claimed to own the mortgage and notes, and threatened to foreclose the mortgage if witness would not quitclaim the property to him. The plaintiff, as a witness for the defendant, testified that C. C. Paige was her son-in-law; that she was a widow; that for three years past her business had been transacted by the executors of her husband's estate, viz., her son, J. M. Bray, and C. C. Paige; that she had no agent except the executors; that Paige had lived with her since soon after her husband's death; that she received the notes in suit from him about the time they were dated; that they had been in her own possession, or that of Mr. Bouck as her attorney, all the time; that neither Morse &

Co. nor either member of the firm ever gave her any notes or mortgages as collateral security for the notes in suit, nor had she ever had any security for them; and that since this suit began, Paige had told her that he had placed some notes as collateral security for payment of the notes in suit, but afterward took them back; and that she had forgotten with whom he said he had placed them. On her cross-examination she testified that she had "never received one cent on the collaterals Mr. Paige said he had placed to secure these notes."

Mr. Paige, as a witness for the defense, testified that he was plaintiff's son-in-law and lived in the same house; that he did not think that plaintiff had had any agent to transact her business since her husband's death; that J. M. Bray and himself were executors of the estate; and that he was a member of the firm of J. F. Morse & Co., and executed the notes in suit, which were for money loaned at the time, and delivered them to the plaintiff at the time of the execution. The witness was then shown the following paper, which was afterwards put in evidence for the defense: "Oshkosh, May 18, 1874. There is in *Mrs. A. Bray's* hands for collateral security, the following claims belonging to J. F. Morse & Co.:

Note and mortgage made by John White........................ $180 00
Note and mortgage made by Rogers and Rasmussen............... 825 00
Note made by Jacob Speace .................................. 278 56

"Morse & Co. are indebted to her on notes past due, $850 and interest.                                    C. C. Paige."

In reference to this paper the witness testified as follows: "I wrote that in May, 1874, I presume at the time of the order to put the books [of J. F. Morse & Co.] in the hands of Harshaw [as receiver]. I pinned it in the book to show where things were. At that time the notes and mortgages were in an envelope in my individual safe. I meant by that paper that those papers were in my hands to be transferred to *Mrs. Bray* (because they were in my hands as executor), if at any time I saw fit to transfer them to her as collateral security for

the payment of Morse & Co.'s notes. I considered them virtually in her hands, because I had them as executor of the estate. They were never actually in her hands, and she never knew of it until I told her, after this suit began. I finally took them and collected part of them. I used the proceeds in my own personal matters; never paid any of them to *Mrs. Bray.* I discounted the Speace note at the bank; it has never been paid; has been renewed three or four times. The White note and mortgage has never been paid, except twenty dollars. The notes and mortgages named in that paper had been in my hands from the time they were made, down to the time of my making that paper. What I have collected, I have charged to myself on my books." On cross-examination the witness said: " The fact is, that when Morse and I dissolved, I put these notes aside, of my own accord, as collateral for the payment of the notes due to plaintiff, and she knew nothing of it. All the books and papers of the firm were in my hands until deposited in court. The papers named in that memorandum have been in my hands ever since, except the Rasmussen note, which has been settled. All I have received, I have received on my own account as a member of the late firm of J. F. Morse & Co., and have charged to myself."

The referee by whom the cause was tried, reported that plaintiff was entitled to judgment against the defendants for the whole amount claimed by her; and the court confirmed the report, and rendered judgment accordingly; from which the defendant *Morse* appealed.

For the appellant, a brief was filed by *Finch & Barber*, and the cause was argued orally by *Mr. Barber*. They contended upon the evidence that the securities referred to in the answer were held by Paige as plaintiff's agent; that her ignorance of the transaction was immaterial, and the acts of her agent were her acts, and Morse & Co. could do nothing without her consent to divest her of her property in the collaterals (*Chambersburg Ins. Co. v. Smith,* 11 Pa. St., 120; *Union*

*Bank v. Laird*, 2 Wheat., 390; *Elder v. Rouse*, 15 Wend., 218); that it was immaterial that the Rasmussen note and mortgage were not paid in cash (*Depuy v. Clark*, 12 Ind., 427); that when Paige took the land in satisfaction of the note and mortgage, he did so as *Mrs. Bray's* agent, and although he was himself named as grantee in the deed, the transaction enures to her benefit. 1 Parsons on Con. (6th ed.), 87; *Day v. Southwell*, 3 Wis., 657; *Cotton v. Sharpstein*, 14 id., 226.

*Gabe Bouck*, for respondent, contended that the plaintiff should be allowed damages for the delay in the collection of her claim caused by this appeal.

COLE, J. We are unable to agree with the counsel for the appellant that the testimony shows that Paige was acting as the agent of the respondent in respect to the collection of the notes in suit, or that he had any authority whatever from her to receive land in payment. Paige was a member of the firm which gave the notes, and could not consistently act as an agent for both sides in the transaction. It is true, it appears that Rasmussen and wife quitclaimed to Paige the land described in a certain mortgage. But that mortgage and the accompanying note belonged to the firm of J. F. Morse & Co. The answer states that certain notes and mortgages had been placed in *Mrs. Bray's* hands as collateral security for the payment of the notes in question, from which she had realized moneys which should be deducted from the amount claimed to be due her. This allegation of the answer is entirely unproven. It does not appear that *Mrs. Bray* ever had possession of any collateral securities, or that she was ever paid anything on the notes. The land conveyed in satisfaction of the Rasmussen mortgage was not conveyed to her, nor is there any ground for saying that the deed enures to her benefit. Paige might act for the firm, but it is certain he could not represent both the firm and *Mrs. Bray*, and there is really

no evidence that he attempted to do so in that transaction. The notes drew ten per cent. interest, and we have concluded to affirm the judgment with three per cent. damages in addition to the usual damages for interest given on affirmance. ·

*By the Court.* — The judgment is so ordered.